**SPRAGUE & RHODES COMMODITY CORPORATION, Plaintiff,**

v.

**M/V PROCER FULGENCIO YEGROS, her engines, boilers, etc., Fulmar Paraguaya Line, Fulmar Paraguaya, S.A. Consultora Fulmar Paraguaya S.R.L., Defendants.**

**FULMAR PARAGUAYA S.A., Third-Party Plaintiff,**

v.

**UNIVERSAL MARITIME SERVICE CORP., Third-Party Defendant.**

**No. 83 Civ. 5619 (CES).**

United States District Court,
S.D. New York.

Sept. 17, 1985.

Donovan, Maloof, Walsh & Kennedy, New York City, for plaintiff; James W. Carbin, New York City, of counsel.

Dougherty, Ryan, Mahoney, Pellegrino, Giuffra & Zambito, New York City, for defendant; Peter J. Zambito, Grainger & Tesoriero, William E. Bell, New York City, of counsel.

## MEMORANDUM DECISION

STEWART, District Judge:

Plaintiff Sprague & Rhodes Commodity Corporation ("Sprague & Rhodes") brings this action against defendants Fulmar Paraguaya Line ("Fulmar Line"), Fulmar Paraguaya, S.A. ("Fulmar, S.A.") and Consultora Fulmar Paraguaya S.R.L. ("Fulmar S.R.L.") for short delivery of a shipment of coffee. Following defendant Fulmar S.A.'s failure to respond to plaintiff's motion for summary judgment, we entered a default judgment in favor of plaintiff. Fulmar S.A. moves to set aside the default judgment and now answers the summary judgment motion. Although we exercise our discretion to set aside the judgment, we now grant plaintiff's motion on the merits.

The facts are as follows: Plaintiff purchased 3,000 bags of coffee. On April 7, 1982 at Asuncion, Paraguay, defendants' vessel, the S.S. Procer Fulgencio Yegros ("Yegros"), loaded a total of 14,212 bags of coffee, 3,000 bags of which were owned by plaintiff. The vessel arrived in New York, the port of discharge, on May 10, 1982. Pursuant to a stevedoring contract with defendants, Universal Maritime Service Corporation ("Universal") discharged, stored and agreed to deliver the vessel's cargo. Throughout the free time period (i.e., the period of time that cargo can remain on the pier without charge), the shipment of coffee was available for delivery. Plaintiff's consignee picked up some of the shipment between May 21 and May 28. On May 28, the free time period expired. Plaintiff's consignee continued to accept delivery of the shipment and by June 8, the consignee had accepted 2,500 of the 3,000 bags of coffee.

It was also on June 8 that plaintiff first noted that 287 bags of coffee were missing. In addition, plaintiff asserts that 97 of the bags were underweight. Plaintiff sued Yegros, Fulmar Lines, Fulmar, S.A., and Fulmar S.R.L. Fulmar S.A. filed a third-party complaint against Universal. We have already severed and transferred plaintiff's suit against Yegros. On March 14, 1984, plaintiff moved for summary judgment. As noted above, when defendants failed to answer, we entered a default judgment for plaintiff.

■ "For good cause shown, the court may set aside an entry of default." Fed.R. Civ.P. 55(c). Moreover, "the court may relieve a party ... from a final judgment ... [because of] ... mistake, inadvertence, surprise or excusable neglect." Fed.R. Civ.P. 60(b)(1). Attorneys for defendant Fulmar S.A. assert that they were asked to represent the interests of the P & I Club, which initially represented Fulmar S.A. The P & I Club was unable to meet its obligations because it went into receivership in Bermuda. We find that this circumstance satisfies the good cause showing and/or excusable neglect standards set forth in the Federal Rules. Therefore, we set aside the default judgment.

■ Turning to the merits of plaintiff's motion, records kept by vessel personnel indicate that of the total of 14,212 bags of coffee loaded in Paraguay, only 14,183 bags were unloaded in New York. Thus Fulmar S.A. admits liability for 29 of the missing bags of coffee but denies liability for the remaining 258 missing bags as well as the 97 underweight bags. The duty of the ocean carrier extends to the period after discharge, but before delivery. *David Crystal, Inc. v. Cunard Steamship Co., Ltd.,* 339 F.2d 295 (2d Cir.1964), *cert. denied,* 380 U.S. 976, 85 S.Ct. 1339, 14 L.Ed.2d 271 (1965). A carrier is liable for the damage caused by its own negligence or that of a stevedore acting as its agent. *Id.* at 298. "The carrier ... is in a better position than the cargo owner to insure against risk of loss or damage through the careful selection of responsible agents...." *Amtraco Corp. v. S.S. Snow Storm,* 1978 A.M.C. 1007, 1016 (S.D.N.Y. 1978).

Defendants' relief from liability rests on whether defendants "delivered" the shipment of coffee. Fulmar S.A. relies solely on *Philipp Bros. Metal Corp. v. S.S. Rio Iguazu,* 658 F.2d 30 (2d Cir.1981), for support that it did deliver the shipment. In *Philipp Bros.,* a carrier transported 233 bundles of tin and a stevedore discharged, stored and agreed to deliver the shipment. Rather than pick up the shipment during the free time period, the consignee hired an independent company to count and weigh the bundles. Following the independent company's certification that all of the shipment was present, the consignee sold the goods and arranged for truckers to pick up the goods in installments, one-half of which were picked up months after the free time period had expired. Although five bundles were missing, the court held that the carrier was not liable for the missing goods.

Fulmar S.A. asserts that *Philipp Bros.* stands for the proposition that a carrier is not liable for a short shipment when, after the expiration of the free time period, the

owner or consignee accepts some of the shipment and the stevedore retains the remainder of the goods. Defendant argues that under these facts, the owner/consignee passively manifests his intent to select the stevedore as his personal warehouseman. As a result, there is a constructive delivery and/or the termination of the relationship between owner/consignee and carrier. In its place, a new bailee relationship is created between owner/consignee and stevedore, thereby relieving the carrier of any liability for the transported shipment. Applying Fulmar S.A.'s reasoning to the instant case, defendant argues that plaintiff accepted 83% of the shipment and Universal retained the remainder of the goods. There was delivery and the termination of a relationship between Sprague & Rhodes and Fulmar S.A. Therefore Fulmar S.A. is relieved of liability.

Contrary to defendants' emphasis on what the owner/consignee failed to do prior to the expiration of the free time period, the court reasoned that "delivery to [the consignee] had been completed at the time [the consignee] caused the cargo to be counted and weighed." *Id.* at 32. Unlike the consignee in *Philipp Bros.*, plaintiff in the instant case never took total possession, actual or constructive, by hiring an independent company to act on its behalf. Thus there was no delivery and the relationship between carrier and owner remained intact.

The standards for summary judgment under Fed.R.Civ.P. 56(c) are well established. The burden is on the moving party to " 'demonstrate the absence of any material factual issue genuinely in dispute.' " *American International Group, Inc. v. London American International Corp.*, 664 F.2d 348, 351 (2d Cir.1981), quoting *Heyman v. Commerce and Industry Insurance*, 524 F.2d 1317, 1319–20 (2d Cir. 1975). Fulmar S.A. asserts that the issue of delivery is a factual issue in dispute. Because we find that as a matter of law there was no delivery, we grant plaintiff's motion for summary judgment.

SO ORDERED.